IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
GREG BOETTCHER              *
     Plaintiff             *
v.                          *
                            *
                            *   Civil Action No. WMN-15-3714
                            *
SSC GLEN BURNIE OPERATING   *
COMPANY, LLC et al.         *
     Defendants                  *
                            *
   *    *    *    *    *    *    *    *    *    *    *    *    *    *    *
```

**MEMORANDUM**

Before the Court is Defendants' Motion to Dismiss or Stay the Case and Compel Arbitration. ECF No. 14. The motion is ripe. Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that Defendants' motion will be granted.

On December 10, 2010, Plaintiff Greg Boettcher was hired by Defendant SSC Glen Burnie as the maintenance supervisor for its health and rehabilitation facility located in Glen Burnie, Maryland. SSC Glen Burnie is one of the ten affiliated health and rehabilitation facilities that Defendant Sava Consulting, LCC owns and operates in Maryland. At the commencement of Plaintiff's employment and as a condition thereof, Plaintiff received and signed three agreements. ECF No. 17-1 ¶ 3. First, Plaintiff signed a one page Employment Dispute Resolution Program (EDRP) Agreement which states:

> both the Company and I agree to resolve all claims,
> controversies, or disputes relating to my application

> for employment, my employment and/or termination of
> employment with the Company exclusively through the
> Company's Employment Dispute Resolution Program ... I
> further understand and agree that if I file a lawsuit
> regarding a dispute arising out of or relating to my
> application for employment, my employment or the
> termination of my employment, the Company may use this
> Agreement in support of its request to the court to
> dismiss the lawsuit and require me to use the EDR
> Program instead.

ECF No. 16-1.  Second, Plaintiff received the fifteen-page EDRP

Booklet outlining the four-step process for dispute resolution:

Open Door, Facilitation, Mediation, and Arbitration.  ECF No.

16-2.  That booklet reiterates that the company and its

employees are bound by the EDRP.  Third and finally, Plaintiff

received an Employee Handbook.  ECF No. 16-4.  The Employee

Handbook advises:

> You should be aware that these policies, except for
> the policy of <u>at-will employment</u>, may be amended or
> revoked, and the Company's actions may vary from the
> written policy.  The contents of this <u>Employee
> Handbook</u> do not constitute the terms and conditions of
> a contract of employment.  The policies, procedures
> and guidelines contained in this <u>Employee Handbook</u>
> supersede all other handbooks in circulation.

<u>Id.</u> at ii.  Similarly, the Employee Handbook states "[y]ou

should be aware these policies may be changed, amended, added to

or deleted, except for the policy of at-will employment."  <u>Id.</u>

at 1.  The handbook includes a section regarding the EDRP and

refers to the EDRP Booklet.

Plaintiff was terminated on November 25, 2014.  On December

1, 2014, SSC Glen Burnie offered Plaintiff a severance package

that proposed four weeks' pay in exchange for a complete release

of claims.  On or about January 9, 2015, Plaintiff mailed a

letter to Tony Oglesby, President and Chief Executive Officer of

Sava Consulting, LLC, rejecting the severance package.  ECF No.

16-6.  In that letter, Plaintiff stated that he "wish[ed] to

avail [himself] of the employee dispute resolution (EDR)

processes."  Id.  Further, he stated that the letter was a

formal grievance "that should trigger the internal processes."

Id.  Plaintiff did not receive a reply "from any individual or

entity associated with or employed by" Defendants.  ECF No. 17-1

¶ 7.

A little more than a year later, on December 3, 2015,

Plaintiff brought this action against SSC Glen Burnie Operating

Company, LLC and SavaSeniorCare, LLC.[1]  ECF No. 1.  According to

the Complaint, numerous acts of Plaintiff's coworkers and

supervisors formed the basis of his claims for "Abusive

Discharge" (Count I), "Breach of Express and Implied Agreement"

(Count II), "Violations of the Overtime Requirement of the FLSA"

(Count III), and "Violations of the Wage and Hour and

Recordkeeping Requirements under Maryland Law" (Count IV).  Id.

On April 13, 2016, Defendants filed a motion to compel

---

[1] On April 13, 2016, the Court received a Stipulation to Dismiss
Defendant, SavaSeniorCare, LLC and add Sava Consulting, LLC as a
Defendant.  ECF No. 13.  The Court approved that stipulation.
ECF No. 15.

arbitration.  ECF No. 14.  Plaintiff opposed Defendants' motion, ECF No. 16, arguing that 1) under Maryland law, the EDRP agreement was invalid for lack of consideration, and 2) in the alternative, if the EDRP agreement was valid; Defendants waived the right to arbitrate.

The EDRP Booklet provides that the "application, interpretation and enforcement of the EDR Program is covered by the Federal Arbitration Act."  ECF No. 16-2 at 3.  Under the Federal Arbitration Act (FAA), a court must stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3.  Section 2 of the FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  When evaluating an arbitration agreement, a court must apply state law principles governing the formation of a contract and the validity of a contract in determining whether an enforceable agreement exists.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Under Maryland law, "[t]o be binding and enforceable, contracts ordinarily require consideration."  Cheek v. United Healthcare of Mid-Atlantic, Inc., 835 A.2d 656, 661 (Md. 2003).  "A promise becomes consideration for another promise only when it constitutes a binding obligation."  Id.  Unlike a binding

obligation, "[a]n 'illusory promise' appears to be a promise, but it does not actually bind or obligate the promisor to anything." Id. at 662.  Because an illusory promise is not binding on the promisor an illusory promise cannot constitute consideration.  Id.

In this case, the question before the Court is whether retention in the Employee Handbook of the right to amend or revoke the policies in that handbook, one of which was the EDRP, rendered Defendants'[2] promise to arbitrate, found in the EDRP Agreement, illusory.  There are two cases applying Maryland law that guide the Court's consideration of this issue; Cheek v. United Healthcare of Mid-Atlantic, Inc., 835 A.2d 656 (Md. 2003) and Hill v. Peoplesoft USA, Inc., 412 F.3d 540 (4th Cir. 2005). In Cheek, the plaintiff's offer of employment was conditioned on his acceptance of the defendant's "Employment Arbitration Policy."  835 A.2d at 657-658.  That policy left the defendant the unilateral "right to alter, amend, modify, or revoke the Policy at its sole and absolute discretion at any time with or without notice." Id. at 658.  The plaintiff accepted a position

---

[2] SSC Glen Burnie was a party to the arbitration agreement.  Sava Consulting, LCC is a non-signatory to that agreement. Defendants argue that Plaintiff's claims against both Defendants are subject to arbitration because his allegations against them are based on the same facts, inherently inseparable, and fall within the scope of the arbitration clause.  ECF No. 14-1 at 9. Plaintiff does not refute this assertion; therefore, the Court finds that any obligation to arbitrate will apply equally to both Defendants.

with the defendant, was subsequently terminated, and filed suit in Maryland state court.  Id. at 658-659.  Thereafter, the defendant filed a "Motion to Dismiss and/or Compel Arbitration and Stay."  Id. at 659.  The trial court granted that motion. Id.  The Court of Appeals of Maryland (which granted certiorari prior to any proceedings in the intermediate appellate court) reversed, finding the defendant's unfettered discretion to change the arbitration agreement rendered its promise to arbitrate illusory, and that the agreement was therefore unenforceable for lack of consideration.  Id.

This case is distinguishable from Cheek, principally because the Defendants' alleged retention of the right to amend or revoke the EDRP is found in a separate document, the Employee Handbook.  This discrepancy is outcome determinative.  As stated in Hill, "[i]n examining whether an arbitration agreement is a valid contract, we examine only the language of the arbitration agreement itself."  412 F.3d at 543, (citing Cheek, 835 A.2d at 664-665).  In Hill, the United States Court of Appeals for the Fourth Circuit found that the district court erred by looking outside the arbitration agreement to the Internal Dispute Solution (IDS) program.  Hill, 412 F.3d at 543-544.  Unlike in the arbitration agreement, the defendant reserved the right to

change the IDS program without notice.[3]  Id. at 542.  The Fourth

Circuit concluded that because the arbitration agreement itself

clearly bound both parties to arbitration, it was supported by

adequate consideration.  Id. at 544.

     The Fourth Circuit summarized the critical distinction

between Cheek and Hill:

>     the reservation of rights in Cheek was contained in
>     the arbitration policy.  Looking at the four corners
>     of the arbitration policy in Cheek, the court
>     understandably concluded that the policy contained an
>     illusory promise.  In the instant case, by contrast,
>     looking at the four corners of the separate
>     Arbitration Agreement, the agreement contains no such
>     illusory promise.  To be sure, it is only when we are
>     asked to look beyond the four corners of the
>     Arbitration Agreement and examine the IDS Program-
>     something Cheek tells us we are not allowed to do-
>     that Hill's argument finds its support.

Id. (emphasis in original).  Following this precedent, the Court

turns to the language of the EDRP Agreement and EDRP Booklet,

and finds that both Plaintiff and Defendants are unambiguously

bound to use the EDR program as the only means of resolving

employment related disputes.  The EDRP Agreement unequivocally

sets forth both parties' rights and obligations concerning

dispute resolution, and mandates arbitration as the final and

exclusive means for resolution.  Defendants have not reserved

for themselves the right to alter, amend, modify or revoke this

---

[3] Plaintiff's attempts to distinguish Hill from this case, ECF
No. 16 at 18, are without merit because they inevitably involve
an examination of the Employee Handbook.

7

obligation.  Indeed, the mutuality of the obligation is repeatedly referenced.  Because the EDRP Agreement unambiguously requires both parties to use the EDRP, this Court finds that the agreement is supported by valid consideration.

Further, the agreement clearly encompasses the employment-related dispute in this case.  As stated above, the EDRP Agreement applies to "all claims, controversies or disputes relating to [Plaintiff's] application for employment, [Plaintiff's] employment and/or [Plaintiff's] termination of employment."  ECF No. 16-1.  The non-exclusive list of potential claims for arbitration, as identified by the EDRP agreement, includes claims for wrongful discharge, claims for public policy violations, and claims under the law of contract and the law of tort.  Id.  As such, the Court concludes there is a valid agreement to arbitrate which encompasses all of the Plaintiff's claims in this case.

Plaintiff argues that, if there is a valid contractual obligation to arbitrate between the parties, the Defendants waived the right to compel arbitration by failing to respond to Plaintiff's EDRP Request.  The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like

8

defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). If the facts of this case create an issue of waiver, as argued by Plaintiff, the Court finds that Defendants' conduct did not rise to the level necessary for the relinquishment of the right to arbitrate. In the context of arbitration agreements, "waiver of the right to arbitrate cannot be inferred in the absence of a clear expression of intent." Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc., 450 A.2d 1304, 1309 (Md. 1982). Further, "[n]either delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration." MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 249 (4th Cir. 2001).

The failure to respond to Plaintiff's letter and belated invocation of the EDRP reflects poorly on SSC Glen Burnie and Sava Consulting, LLC. That type of behavior is highly discouraged by this Court; yet, Defendants' delay does not constitute the type of intentional relinquishment necessary for waiver of a known right. Defendants filed a timely motion to compel, and have not utilized the "litigation machinery," in a way that has prejudiced Plaintiff.[4]

---

[4] In addition to his waiver argument, Plaintiff asserts that Defendants should be "estopped" from compelling arbitration. The case Plaintiff cites for support, State v. Musgrove, 217 A.2d 247 (Md. 1966), has nothing to do with estoppel.

For the above-stated reasons, the Court will grant
Defendants' motion.  Because Defendants have previously evaded
Plaintiff's attempts to address his employment-related disputes,
the Court will stay this proceeding pending arbitration in lieu
of dismissal.  A separate order will issue.


        _____/s/_____
        William M. Nickerson
        Senior United States District Judge


DATED: August 18, 2016

---

Plaintiff's mere assertion that "fundamental principles of
estoppel oppose the Defendant's inconsistent conduct here," ECF
No. 16 at 23, without a supporting legal argument, is not enough
to justify the Court's consideration of that doctrine.